19-3999 May it please the court, Alan Shorherbot on behalf of the appellant, Travis Frantti. The appellant appeals the decision in order of the District Court, which granted summary judgment to the appellees concerning claims of disability discrimination, retaliation and a violation under the Equal Protection Act under Section 1983. As an initial matter, your honors, the appellant has withdrawn and waived his equal protection claim and will proceed on the disability discrimination and retaliation claims. Concerning those two remaining claims under the Americans with Disabilities Act and the Rehabilitation Act and retaliation under those same laws, the court erred in granting summary judgment to the appellees. First, the court admitted all of the state's facts as true because appellant's prior counsel did not strictly comply with the District Court's local rule 7.1 sub a sub 3. That local rule imposes the non-moving party to file a response to the moving party's statement of material facts that mirrors their statement of material facts by admitting or denying each of the assertions with specific citations to the record where those factual issues of the record arises. Admittedly, trial counsel did not strictly comply with this requirement. Instead, the sworn affidavit with supporting evidence was submitted on behalf of the appellant in response to the dispositive motion. Trial court acknowledged such and did appear to consider some of those submissions and other parts of the record. However, the trial court also ignored material facts in dispute when doing so, specifically whether appellant could have been accommodated in the workplace. The trial court credited the state's assertion in this regard that no accommodation was possible or could have been possible to permit the appellant to perform the essential functions of his job. Not only was this and is this a genuine issue of material fact in dispute, the trial court also weighed the facts in favor of the state by admitting their statement of facts as true where there was controverted evidence in the record. For example, as it pertains to the reasonable accommodation issue, appellant was a dedicated civil servant with the state since approximately 1996 who exceeded and excelled in the service. He was promoted many times over and received successful evaluations until July of 2012 when he suffered a substantially impairing medical condition that impacted his continued physical attendance at work. There is no dispute that after this medical condition came to light, appellant did in fact miss several days or partial days of work. But what also can't be in dispute, however, is that the appellant made his supervisors and others aware of his medical conditions by submitting a multitude of medical documentation which were at times compelled by the state consisting of doctor's notes, family medical leave act paperwork and certifications, short-term disability applications, and other correspondence where he raised concerns of how he was being mistreated because of his medical impairments. The state knew there was or at least believed there was a medical issue. They even sent the appellant to fitness evaluations in July 2015 that could be found in the appendix in 1937 to 38 which the appellant passed and then also suggested that he may have had a substance or alcohol abuse disorder which was unsupported and confirmed through another evaluation in April 2013 which can be found at the appendix at 3929 to 31. Yet the state did very little, if anything, to actually assist the appellant in having a regular work schedule. Appellant specifically requested a modified schedule from his employer in October 2015 and was told to search the internet instead. District Court noted this but claimed this was insufficient to defeat summary judgment because the appellant did not controvert the factual assertion that his regular physical presence at the office was an essential function of his job. That reasoning fails because there was no response from the state on the modified work schedule or no substantive response on that request other than the appellant should go search the internet and there was no support in the record to establish that modifying his schedule at that time by, for example, allowing him to start at a later time conflicts with having a regular physical presence at work. In addition, the court supported this finding by relying on a sworn declaration by the Deputy Director referenced in the decision at appendix 3662 which can be found more specifically at paragraph 87 at appendix 2243 to 2244 of the declaration where the Deputy Director stated that the appellant was unable to be in the office and available on a consistent basis for assignments, for communications or questions with staff or other agencies and so forth. Meanwhile, the court did not consider appellant's declaration at paragraph 9 at the appendix at 3495-296 where he stated he would have been able to come into the office for meetings in most cases and that he actually lived one block away from the building that he was to work at and then that the state actually permitted remote working based on his understanding. As this court held in McMillan, the city of New York at 7-11-F3-20 in 2013, physical presence is not necessarily a per se requirement as a matter of law. And it seems the appellees seem to suggest or concede that point in their brief at footnote four at page 33 concerning the recent pandemic. In this regard, the court below throughout its decision was weighing the evidence and credibility of witnesses by comparing sworn statements and finding the evidence in favor of the state's defense. On review of this voluminous record of 14 volumes, which largely consists of depositions, medical records, it was an error to find no genuine issue material fact existed in this case and specifically on the disability claim. It was also an error for the trial court to dismiss the retaliation claim as a matter of law. Like with reasonable accommodation requests, there are no magic words that an employee must utilize to complain of discrimination. Here, however, Appellant commenced his protected activities in January of 2014, where he emailed the Director of Human Resources Management of the Division of Criminal Justice Services with a three-page correspondence where he stated, among other things, that he felt, quote, singled out and targeted due to his medical conditions, being subjected to a two-month performance evaluation period, and not being returned back to his original location at the Division of Budget. That correspondence is at the record at 3434 to 37, and he continued to raise his concerns to the Budget Director in May 2015 about being, quote, the recipient of discriminatory actions related to a documented disability. Appellant then filed multiple complaints with the New York State Division of Human Rights in July 2015 and again in September 2015. He was also vocal about the way he believed he was treated, and each time after raising those concerns, he was subjected to average treatment or actions. After that January 2014 correspondence, he was counseled, and he was taken out of his grade 31 noncompetitive status and placed into grade 27. In March 2014, he was placed in a, quote, documentation status, where he was required to provide medical documentation for his absences and provide a call-in within two hours after each workday he was absent, where his pay would be docked. In spring of 2014, after submitting the FMLA paperwork, he was denied salary increases and performance advance. In November and December of 2014, again, engaging in protected activity by requesting that he no longer be required to submit these medical notes until he basically accumulated an amount of absences rather than on a daily basis. And then shortly after submitting the three-page correspondence in May 2015, he received a below-expectations evaluation in June, and after filing his first DHR complaint in July, he was told once again he had to provide medical excuses for each absence within 24 hours of the absence rather than at the end of the period, which then resulted in the second notice, a reprimand, warning, and a two-day suspension. This all presents at least a tribal issue of whether the state's actions were because of Appellant's protected activities and a matter of pretext. He was subjected to more stringent standards as it pertains to the medical excuse documentation shortly after engaging in the protected activities. There's no reasoning or evidence in the record as to exactly why the state did not even attempt to accommodate him, except for claiming they had no knowledge of a known disability, which is not the legal requirement, and no records of any accommodation request. Excuse me. You have a minute left. Thank you. This is all provided in the record as noted here today and on the brief submitted on appeal. And Your Honors, for these reasons and the reasons briefed in our submissions, the order appealed from should be reversed and remanded for trial. Thank you. Judge Rodger, any questions for this attorney? I do not. Judge Kaplan? Yes. Counsel, can you point specifically to a single instance in which there was an assertion of fact in the defendant's Rule 7 statement, I think it is, in the Northern District, that was supported by evidence in which the district court weighed evidence contrary to what a representative had done? That is to say, competing evidence. Is my question sufficiently clear? Yes, Your Honor. Thank you. I believe in the court's opinion, which was accepted under the Rule 7.1 statement of facts for the defendants, was the declaration of the Deputy Director, of which he stated that the appellant was unable to be in the office and he was required to be physically present at the office as it pertains to his essential functions. Where in the Rule 7 statement did the defendant make the correlating statement to that? I will find out for you, Your Honor. I apologize, I don't have it in front of me, but it is referenced as an exhibit to their dispositive motion. Okay. But in any case, I take it you agree that whatever it is this director said about inability to be in the office had a parallel statement in the Rule 7 statement, right? I would presume so, Your Honor. Right. And then your client submitted an affidavit purporting to contradict that. Yes? Yes, Your Honor. Now what the district judge said was that he was taking all of the supported statements in the defendant's Rule 7 statement as established, for want of a better word, in view of the lack of a response that was required by Rule 7, except that he was going to refer to some of them for context. But make no mistake, in his footnote early in the opinion, he said that insofar as they are statements in the Rule 7 statement, and they're supported by evidence, I am deeming them to be true for purposes of summary judgment, right? Correct. Where did he go wrong? I believe even assuming that to be true, there were still genuine issues of facts, even accepting their facts as true. Well, I just asked you to tell me where there was a genuine issue of fact. If the district judge, as was his right within the scope of his discretion, deemed established whatever was in the move-in's Rule 7 statement, there's no issue of fact if you're not looking for anything else. Let me put my point simply to you. We have a traffic accident case having to do with whether the defendant ran a red light at the time of an accident. The defendant moves for summary judgment saying the light was green. His Rule 7 statement says the light was green, see the defendant's affidavit. The plaintiff then submits no response to the Rule 7 statement complying with Rule 7. The light was green for purposes of summary judgment under Rule 7, irrespective of whether the plaintiff puts in an affidavit saying the light was red. Isn't that the way the rule works? That is the way the rule works. However, the district court must examine whether or not there is still, what the court shouldn't do specifically is search the record. You know, this was a very large record below. However, the court did consider at times the plaintiff's affidavit for purposes of the analysis here. For purposes of context. Correct. But I asked you whether there was a single instance in which he considered your client's affidavit for the purpose of raising an issue of fact with respect to a statement in the Rule 7 statement of the moving party. I don't believe so, Your Honor. Thank you. I have no further questions. All right. Mr. Spandola. Thank you, Your Honor, and may it please the court. After a very thorough review of the summary judgment record in this case, the district court properly rejected both Mr. Frankie's failure to accommodate claim and his retaliation claim. As to the failure to accommodate claim, the undisputed evidence shows that Mr. Frankie missed over 70 percent of all working hours for each of the last three calendar years that he worked for the state. What's more, those absences were completely unpredictable. Mr. Frankie generally provided no advance notice and often failed to even call in within two hours of the workday. And so on any given day, his supervisors had no idea whether or at what time Mr. Frankie would show up for work. As a result, he couldn't be assigned any meaningful work, much less the time-sensitive budget work required of his position. Under these circumstances, no reasonable accommodation could be provided to Mr. Frankie. As the Seventh Circuit explained in EEOC versus Yellow Freight Systems, quote, the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. Nor is there any evidence here that the accommodations Mr. Frankie's counsel now proposes would have made any meaningful difference in curing his chronic absenteeism. We discussed the proposed accommodations at length in our brief. I'll just emphasize a couple of points here. Mr. Frankie's own testimony and doctor's notes, which the district court discussed at length, established that when he was absent from work, and again, this occurred over 70 percent of the time, he was completely incapacitated and unable to work. Mr. Frankie testified that when out sick, he, quote, spent the entire day just basically in bed, no TV, nothing on, just lying there. That's at page 269 of the appendix. Thus, even if Mr. Frankie had been permitted to work from home or on a part-time schedule, there's no evidence he would have been able to work dependably enough to perform his essential job duties. Moreover, Mr. Frankie did not dispute the testimony of his supervisors, which was also submitted, that his position required him to be, quote, in the office on a consistent basis to collaborate with co-workers on time-sensitive projects. So, Mr. Frankie's job could not be performed from home or on a part-time basis, even if his condition permitted him to do so, and it did not. Now, Planketh refers to the October 2015 email that he sent requesting a partial workday accommodation, and says that the response he got was to simply explore the Internet. That is not a fair characterization of that correspondence. The emails are at page 3602 of the record, and what the HR director wrote back to Mr. Frankie was that she provided him with detailed information about New York's Voluntary Reduction in Work Schedule program, which allows employees to reduce their work schedule by up to 30%, provided him with an application form for that program, both via link and via attachment, and asked him to reach out if he had any questions, and Mr. Frankie then failed to follow it up at all on that possible accommodation. So, the idea that DCJS did not engage in a good-faith interactive process is not supported by the record, but in any event, the court doesn't even need to reach that question because the undisputed evidence shows that no accommodation was possible for an employee who was literally only shown up to work 25% of the time on an unpredictable basis. As to Mr. Frankie's retaliation claim, the district court correctly held that he waived that claim by failing to brief it in any meaningful way, despite being represented by counsel. His counsel below dedicated literally two half sentences to this claim, and those half sentences focused entirely on the doctor's note requirement that Mr. Frankie had to comply with in order to receive sick pay. The brief did not mention any of the other adverse actions his current counsel now focuses on, nor did it attempt to establish any of the other elements of a prima facie case of retaliation, much less rebut the legitimate non-discriminatory reasons defendants proffered in their brief. So, the retaliation claim is waived and the court need not address it, but in any event, the district court correctly went on to reject the claim on its merits, again, doing a very thorough review of the voluminous summary judgment record. All of the adverse actions plaintiff's counsel alleges occurred either before Mr. Frankie engaged in protected activity or in a similar manner both before and after the protected activity, and this timing undermines any inference that those actions were taken in retaliation for the protected activity, and it's important here to establish the timeline. Counsel now argues for the first time on appeal that Mr. Frankie first engaged in protected activity in January 2014 when he wrote an email to DCJS HR Director Karen Davis. That email is at page 3434 of the record, and I urge the court to look at that email because no reasonable person could construe it as a discrimination complaint. Opposing counsel used Mr. Frankie's description of that email in his deposition testimony as saying that he felt singled out and targeted. However, those words are not used in the email itself. The email itself actually says that Mr. Frankie was, quote, not attempting to criticize DCJS and that he, quote, appreciates everyone at that office for their support, and so he was not complaining about disability discrimination. He was raising a host of issues unrelated to disability discrimination, and so that cannot be deemed protected activity, and once that's established, the record is clear that all the adverse actions in question occurred before the next alleged protected activity, which was the letter that Mr. Frankie sent in May 2015 to DOD's budget director in which he did actually allege disability discrimination. That was in May 2015, but all the actions at issue here occurred first in 2014, including negative performance evaluation, denial of yearly salary increases, placement on documentation status, disciplinary meetings under civil service law section 75, letter of reprimand. All those things first occurred in 2014 before this May 2015 discrimination complaint, and so based on those undisputed facts, there can be no insurance of retaliatory intent. For all those reasons, we ask this court to affirm the judgment below, and I'm happy to address any questions the court may have. Judge Rodgers? I have no questions. Thank you. Judge Kaplan? No questions. Thank you. And Mr. Frankie's counsel has reserved some time. Thank you, Your Honors. I'll be very brief. With regard to the appellee's argument that retaliation was waived below, I'll point to our reply brief where we respond to this, that the appellant at the district court level in the brief did raise at least seven separate instances in the opposition brief raising retaliation. He did not make fair factual statements with our recent argument. There were arguments there of protected activities. Notwithstanding, the trial court did acknowledge that perhaps that was waived, but did the analysis notwithstanding, so it is in our position preserved for this appeal. With regard to the hypothetical that the state keeps propounding that there was no accommodation that could have been provided, there simply is no evidence to establish that they engage in any interactive process with the appellant with regard to his request. With the exception of the one email that's referenced, that's the appendix of 3602, by the Director of Human Resource Management in response to the modified work schedule, which is literally an internet link within a Word document, that was the only extent that was provided. On deposition of Mr. Franti's supervisor, that's in the record, I believe appendix 1102, he was questioned with regard to whether or not there were any conversations with regard to accommodating the appellant with regard to his absenteeism, and the response was, no, I don't believe there were any discussions. So the hypothetical that he could not have worked at home or he could not have done his duties outside of the physical environment is unsupported and simply speculation. So we rest on our brace, Your Honors, and thank you for your time. Judge Rodger, any questions? I do not. Thank you. Judge Kaplan? No, thank you. All right. We'll reserve the decision. We thank counsel for their arguments, and I'll ask the clerk to adjourn. Court sends adjourn.